UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE DAVIS, <br><br> Plaintiff, <br><br> v. <br><br> RAMA CAPITAL PARTNERS, LLC, et al., <br><br> Defendants. | Case No. 23-cv-04969-EMC <br><br> **ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** <br><br> Docket No. 11 |

Plaintiff Stephanie Davis, proceeding pro se, has filed a foreclosure-related suit against multiple defendants, both entities and individuals. Previously, the Court issued a TRO in favor of Ms. Davis, enjoining the sale of certain real property located in San Leandro, California. *See* Docket No. 21 (order). The Court now considers whether that TRO should be converted into a preliminary injunction – *i.e.*, enjoining the sale of the property until this lawsuit is resolved. Having considered the parties' briefs (including supplemental filings), the evidence of record, and the oral argument of Ms. Davis and defense counsel, the Court hereby **DENIES** the motion for a preliminary injunction.

For preliminary injunctive relief, a plaintiff must show that

> (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm absent preliminary relief, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest. [A court] employ[s] a "sliding scale test," which allows a strong showing on the balance of hardships to compensate for a lesser showing of likelihood of success. Thus, when plaintiffs establish that the balance of hardships tips sharply in their favor, there is a likelihood of irreparable injury, and the injunction is in the public interest, they need only show "serious questions" on the merits.

*Where Do We Go Berkeley v. Cal. DOT*, 32 F.4th 852, 859 (9th Cir. 2022).

The Court finds Ms. Davis has not made a sufficient showing that she would likely suffer irreparable harm absent preliminary injunctive relief. First, Ms. Davis does not live at the real property at issue and is the landlord. A number of district courts in California have held that there is no irreparable injury where the real property at issue is a rental or investment property. *See, e.g.*, *Aniel v. Aurora Loan Servs. LLC*, No. C 10-01042 JSW, 2010 U.S. Dist. LEXIS 146747, at *6 (N.D. Cal. Mar. 16, 2010) ("In this case, the Property is not Plaintiffs' primary residence. Indeed, according to the record it is one of several rental properties that Plaintiffs own. Thus, although the Property may be unique, Plaintiffs are not in jeopardy of being evicted from their home."); *Vitalich v. Bank of N.Y. Mellon*, No. 16-cv-00420-BLF, 2016 U.S. Dist. LEXIS 66893, at *7 (N.D. Cal. May 20, 2016) ("Vitalich has not presented any evidence that the Seaside property is his primary residence or is anything other than an investment.").

To be sure, there are some cases where courts have disagreed or at least indicated that there are some exceptions to this general rule. *See, e.g.*, *In re Baroni*, No. CV 20-4338-MWF, 2021 U.S. Dist. LEXIS 24703, at *8-9 (C.D. Cal. Feb. 5, 2021) ("disagree[ing] that the loss of real property can necessarily be remedied by damages merely because the property at issue is an income-producing asset rather than a movant's primary residence"; indicating that where property is unique, that may support irreparable injury); *Fisher v. Biozone Pharms., Inc.*, No. 12-cv-03716-LB, 2017 U.S. Dist. LEXIS 52153, *2 (N.D. Cal. Ap. 5, 2017) ("appreciat[ing] the defendant's point that investment properties are not automatically deemed unique"); *see also Myrtle St. Flats LLC v. City of Vallejo*, No. 2:17-cv-1662-JAM-KJN, 2017 U.S. Dist. LEXIS 195453, at *12-13 (E.D. Cal. Nov. 27, 2017) (noting that, "[a]lthough lost rental income is quantifiable in damages, harm to potential business relationships and lost business opportunities – in the present circumstances – are not"); *Reed v. Wells Fargo Bank*, No. C 11-00194 JSW, 2011 U.S. Dist. LEXIS 65608, at *18 (N.D. Cal. May 11, 2011) (stating that "foreclosure may not be adequately compensated by money damages where Plaintiffs allege that the foreclosure sale will result in significant tax liability and that the rental income from the Rental Property is a significant portion of their monthly income to satisfy their basic living expenses"). But Ms. Davis has not articulated

any basis to invoke such an exception. She has not, *e.g.*, claimed that the real property is unique or that the income from the real property is needed for basic living expenses.

Second, at the time the Court issued the TRO, it was concerned that, if the property were sold at a public auction, then it would likely be sold for less than market value and Ms. Davis could be liable for the difference between the value of the promissory note and the value of the property as sold (*i.e.*, due to a recourse provision in the promissory note). Defendants, however, have now come forward with authority that, "as a matter of law, this is a *nonrecourse* loan where no deficiency judgment can be sought after foreclosure, since the loan is secured by real property collateral." Opp'n at 7 (emphasis added). Specifically, California Code of Civil Procedure § 580d provides in relevant part:

> (a) Except as provided in subdivision (b), **no deficiency shall be owed or collected, and no deficiency judgment shall be rendered for a deficiency on a note secured by a deed of trust or mortgage on real property** or an estate for years therein executed **in any case in which the real property** or estate for years therein **has been sold by the mortgagee or trustee under power of sale contained in the mortgage or deed of trust**.
>
> (b) The fact that no deficiency shall be owed or collected under the circumstances set forth in subdivision (a) does not affect the liability that a guarantor, pledgor, or other surety might otherwise have with respect to the deficiency, or that might otherwise be satisfied in whole or in part from other collateral pledged to secure the obligation that is the subject of the deficiency.

Cal. Code Civ. Proc. § 580d (emphasis added); *see also Black Sky Cap., LLC v. Cobb*, 7 Cal. 5th 156, 158 (2019) ("Under California law, a creditor can recover a debt secured by a deed of trust on real property through a nonjudicial foreclosure action to sell the property at a public auction. Code of Civil Procedure section 580d provides that a creditor cannot collect a deficiency judgment – that is, the difference between the amount of indebtedness and the fair market value of the property – if the property is sold for less than the amount of the outstanding debt."). It appears that Plaintiff is just the borrower on the promissory note, and not a guarantor. Therefore, as Defendants represent, because what is pending is a nonjudicial foreclosure, she would have the protections granted by § 580d. To be clear, though, independent of the statutory scheme, the

3

Court accepts and relies upon Defendants' unequivocal representation here that they would *not* pursue any deficiency against Ms. Davis if they were to proceed with a nonjudicial foreclosure.

Accordingly, Ms. Davis has failed to show that she would likely suffer irreparable injury unless the sale of the property were enjoined through the pendency of this suit. Therefore, she is not entitled to preliminary injunctive relief. The Court nevertheless addresses some of the remaining preliminary injunction factors as they underscore why she is not entitled to relief.

For example, the balance of equities does not tip in Ms. Davis's favor. Damages should be an adequate remedy for Ms. Davis should she prevail in this suit. Furthermore, as Defendants point out, if the Court were to enjoin the sale, they would suffer a significant injury: (1) because Ms. Davis is already "10 months behind on a 24 month term loan," Opp'n at 6 n.2, and (2) because there is no evidence that Ms. Davis can cure the loan default which exceeds $65,000.

In addition, it is not clear that Ms. Davis would likely prevail on the merits of the case. This includes the fraud claim that is not expressly pled in her complaint but that she described during the TRO proceedings. According to Ms. Davis, she was originally promised an interest rate of 8.75% but, on the day she was to sign the loan documents (June 28, 2022), Defendants sprung on her a higher rate – *i.e.*, 10.875%. Ms. Davis claims that, when she brought this to the attention of Defendants, one of their employees called her on June 28 and promised that they would refinance her in-house at the lower rate so long as she signed the loan that day.

The Court gave the parties two different opportunities to provide documentation related to this fraud claim. *See* Docket Nos. 22, 34 (minutes). The evidence presented by the parties does reflect that Ms. Davis was initially offered a rate of 8.75%. But it does not appear that she was given a lock on that specific rate. *See, e.g.*, Docket No. 30 (Munemitsu Decl., Ex. 1) (Business Purpose Bridge Conditional Loan Approval, dated 5/23/2022) (at the bottom of the document, stating that "Athas Capital Group has conducted a preliminary analysis"; that "[f]inal loan approval and/or commitment is issued upon but not limited to the completion and clearance of subject property value, income, credit, title, and executed loan document review"; and that "[t]his Conditional Loan Approval in no way guarantees a rate/term lock, lending commitment, and/or a commitment to fund").

Furthermore, the evidence indicates that Ms. Davis was subsequently given a higher interest rate because there was a delay in getting information to Defendants. *See, e.g.*, Docket No. 38 (Munemitsu Decl., Ex. 6) (email, dated 6/13/2022, from Athas to Mr. Bohanon (Ms. Davis's broker)) (stating that "[e]scrow is waiting to hear from you in regards to ordering information on the 2nd [payoff] on this property" and that "[r]ates are going up and if I can NOT clear you for loan docs by 6/21 the file is subject to a rate increase"); Docket No. 38 (Munemitsu Decl., Ex. 8) (email, dated 6/22/2022, from Mr. Bohanon to Athas) (stating that "private lender just sent over the payoff for 2nd mortgage to title"). Interest rates were generally climbing during that period. *See, e.g.*, Docket No. 38 (Munemitsu Decl. ¶¶ 10-11 & Ex. 5) (testifying about the rise in federal mortgage interest rates from May to June 2022; "[w]hile the Davis loan is not a federal conforming 30-year mortgage loan, the federal rates nevertheless drive the rest of the mortgage industry, and directly impacted the interest rate Athas was able to offer to Ms. Davis").[1]

In addition, the evidence suggests that the higher rate was not sprung on Ms. Davis the day of loan-document signing (June 28, 2022). *See* Docket No. 38 (Munemitsu Decl., Ex. 11) (email, dated 6/27/2022, from Mr. Finister (Athas employee) to Mr. Bohanon) (stating that "I spoke with her *last week* and let her know about the rate change[;] [s]he said she understood what happened and she wanted to close ASAP") (emphasis added); *see also* Finister Decl. ¶ 11 (testifying that, after seeing the new interest rate sheet dated 6/24/2022, "I called Ms. Davis to personally let her know that because of her delay in getting to closing, Athas could at best offer her a 10.875% interest rate").

Finally, Defendants have submitted some evidence indicating that no employee promised to refinance in-house at the lower rate, although one Athas employee did speak to her on the day loan documents were signed (June 28, 2022) and "offered to check and see if there were any other

---

[1] *Compare also* Docket No. 38 (Munemitsu Decl., Ex. 1) (Athas Business Purpose Bridge chart, dated 4/18/2022) (reflecting that, for a FICO score of 600-649 and a loan-to-value ratio of 75%, the interest rate would be 8.75%), *with* Docket No. 38 (Munemitsu Decl., Ex. 9) (Athas Business Purpose Bridge chart, dated 6/24/2022) (reflecting that, for a FICO score of 600-649 and a loan-to-value ratio of 75%, the interest rate would be 10.5%; the rate would be adjusted down by 0.125% if the borrower signed up for automatic debit payments but would be adjusted up by 0.500% for a 24-month interest only loan term).

5

United States District Court
Northern District of California

lenders that would refinance the Athas loan to a lower interest rate." Finister Decl. ¶ 14 (adding that "I told her . . . that it was unlikely because she was a terrible lending risk and would likely only qualify with another lender if she occupied the Subject Property as her principal residence"[2]); *see also* Finister Decl. ¶ 15 (testifying that he did "check[] for other lenders but couldn't find anyone that would have considered her for another refinance[;] I got back to her within 24-48 hours and let her know that I couldn't find anything"). Although the Court gave Ms. Davis an opportunity to provide evidence supporting her claim that she contacted Defendants, shortly after the loan-document signing to follow-up on the alleged promise to refinance, she did not provide any evidence to support that claim.[3]

For the foregoing reasons, the Court denies Ms. Davis's motion for a preliminary injunction. The TRO previously issued by the Court is now deemed expired.

This order disposes of Docket No. 11.

**IT IS SO ORDERED**.

Dated: November 17, 2023

_____
EDWARD M. CHEN
United States District Judge

---

[2] It appears that Defendants knew about Ms. Davis's bankruptcy before it offered her a loan. *See* Docket No. 38 (Munemitsu Decl., Ex. S) (email, dated 5/18/2022, from Mr. Finister to Mr. Bohanon) (stating that "I think we are the only people that will do it because of the credit score and the BK situation"); *see also* Docket No. 30 (Munemitsu Decl. ¶ 18) (discussing bankruptcy petitions filed by Ms. Davis). It is not clear whether Defendants knew about Ms. Davis's prior foreclosure, *see* Docket No. 30 (Munemitsu Decl. ¶ 19) (discussing prior foreclosure in January 2020), but they did know that Ms. Davis was at that time seeking a loan with them because of financial difficulties. *See* Finister Decl. ¶¶ 2-3 (testifying that, in May 2022, Mr. Bohanon contacted him on behalf of Ms. Davis and he understood that Ms. Davis was "delinquent on payments owed to the current lienholders on the Subject Property and was looking to refinance in order to avoid foreclosure proceedings").

[3] In one of their supporting declarations, Defendants assert that, "[r]egardless of whether anything during the loan origination process might have potentially been misconstrued as a promise of a refinance, Ms. Davis' immediate loan default for her failure to timely make her August 2022 payment disqualified her from a refinance." Docket No. 38 (Munemitsu Decl. ¶ 30); *see also* Docket No. 38 (Munemitsu Decl. ¶ 31) ("At all relevant times, Athas had a strict policy that it would not refinance borrowers that were at any time in default of their Athas loan obligations. That policy was reflected in all of Athas' rate sheets.").